UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

U.S. BANK NATIONAL ASSOCIATION,
a national association, as securities intermediary
for LIMA ACQUISITION LP,

        Plaintiff,

    -against-                                        No. 12 Civ. 6811 (CM) (JCF)

PHL VARIABLE INSURANCE COMPANY,

        Defendant.

------------------------------------------------------------x

U.S. BANK NATIONAL ASSOCIATION,
as securities intermediary,

        Plaintiff,

    -against-                                        No. 13 Civ. 1580 (CM) (JCF)

PHL VARIABLE INSURANCE COMPANY,

        Defendant.

------------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

McMahon, J.:

        Plaintiff U.S. Bank National Association brought these related actions against Defendant

PHL Variable Insurance Company, alleging (1) breach of contract, (2) breach of the implied

covenant of good faith and fair dealing, and (3) violation of the Connecticut Unfair Trade

Practices Act (the "UTPA"), and requesting declaratory relief. Currently before the Court is

PHL's partial motion to dismiss U.S. Bank's claims for breach of the implied covenant of good

1

faith and fair dealing and for declaratory relief as duplicative of its breach of contract claim. For the following reasons, PHL's motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following summary is drawn from the two operative complaints in these related actions: the Second Amended Complaint in the action at Case No. 12-cv-6811 (the "12-6811 Complaint") and the Second Amended Complaint in the action at Case No. 13-cv-1580 (the "13-1580 Complaint"). The factual allegations contained in these complaints are presumed true for purposes of this motion.

Plaintiff U.S. Bank is a national banking association with its principal place of business in Ohio, and is the securities intermediary for Lima Acquisition LP. Defendant PHL is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

This dispute relates to a certain type of insurance policy, known as a premium-adjustable, universal life policy (a "PAUL" policy).[1] PAUL policies differ from standard whole life insurance policies in that PAUL policies require financial contributions only in amounts sufficient to cover the issuer's periodic cost of insurance ("COI") obligations and certain other expenses. The owner of a PAUL policy may pay premiums in excess of this amount. After such costs are deducted from the premium amounts paid, any funds left over are then added to the policy's "accumulated policy value," and earn some interest. However, owners of PAUL policies tend to pay little, if any, above the amounts required to cover the costs; indeed, they often elect to purchase PAUL policies because the structure enables them to minimize the amount invested (in other words, by keeping the accumulated policy value low, they can obtain the same coverage

---

[1] Phoenix refers to these policies not as "premium-adjustable" policies but as "Phoenix Accumulator" universal life insurance policies. Because there is no question about which actual policies underlie this dispute, this distinction is immaterial, and the Court will refer to the policies generally as "PAUL" policies.

at a lower premium cost than other policies). PAUL policies generally permit the insurer to adjust the COI rates periodically in keeping with changes in certain other factors, such as personal characteristics, economic conditions and mortality estimates, within contractual caps listed in the policies.

These related cases involve 33 PAUL policies (the "Policies") issued by PHL and held by U.S. Bank as securities intermediary for Lima. Each of the Policies contains language stating that PHL may only change COI rates based on factors related to the personal qualities of the insured, such as age, risk, and similar characteristics, or economic conditions in the insurance industry. They also provide that PHL may only change COI rates if it does so uniformly for, and without discriminating within, any class of insureds, and that COI rate changes may only be prospective.

In 2010, PHL began sending letters to U.S. Bank advising that it would raise the COI rates on U.S. Bank's policies if U.S. Bank continued to pay the minimum amount required to cover the monthly charges, even though such payments were expressly permitted under the Policies. The letters stated, in relevant part: "[O]n April 1, 2010, we are increasing cost of insurance rates on certain Phoenix Accumulator Universal Life Policies. Your policy referenced above will be subject to this rate increase on your next policy anniversary . . . unless your accumulated policy value is maintained at a sufficient level." (13-1580 Compl., Ex. 4). The letters did not identify the amount of the increase or the level of funding required to avoid it, nor did they identify a factual or contractual basis for the increase. Instead, the letters stated: "In general, maintaining higher levels of policy value in relation to the face amount will reduce or even eliminate any increase," and that the rate increase was "in accordance with the terms of your policy." *Id.* In 2011, PHL sent a new round of similar letters to policyholders.

3

U.S. Bank alleges that PHL "raised its cost of insurance rates to make some policies so expensive that policyholders . . . would have no economically rational choice but to lapse or surrender their policies," which would free PHL from having to pay "hundreds of millions, if not billions, of dollars in death benefits on those policies, having already collected millions of dollars in premiums paid to date." (12-6811 Compl. ¶ 8). U.S. Bank further accuses PHL of using the COI rate increases as part of a "scheme to jack up the cost of insurance rates on policyholders who exercised their right to maintain low policy values by paying only enough premiums to cover their monthly policy charges." (12-6811 Compl. ¶ 33).

U.S. Bank alleges that the PHL has violated the express terms of the Policies by discriminating within classes of insureds and because they are not based on the enumerated permissible factors (Count I). It also claims that PHL's conduct violates the implied covenant of good faith and fair dealing inherent in every contract under New York and California law (Count II), and Connecticut's consumer protection statute (Count III). Finally, U.S. Bank seeks a declaration setting forth the parties' rights and obligations (Count IV).

On November 16, 2011, U.S. Bank filed what is now the action at Case No. 12-cv-6811 (the "California Action") in federal court in the Central District of California. In January 2012, PHL filed a motion in that court to dismiss several of U.S. Bank's claims, including those for breach of the implied covenant and declaratory judgment. PHL argued that both claims were duplicative of the breach of contract claim and that U.S. Bank's allegations failed to state a claim, assuming for purposes of the motion that California law applied. In April 2012, Judge Otis D. Wright issued an order (the "California Order") denying PHL's motion and holding that neither claim was duplicative under California law.

4

In May 2012, U.S. Bank applied for and was granted leave to file an amended complaint, In July 2012, PHL moved to transfer the California action to this Court. Over U.S. Bank's objection, the motion was granted and the case was transferred to this Court on September 4, 2012.

In March 2013, U.S. Bank filed the action at Case No. 13-cv-1580 (the "New York Action") in this Court. On May 14, 2013, U.S. Bank filed the 12-6811 Complaint in the California Action and the 13-1580 Complaint in the New York Action. The 12-6811 Complaint and the 13-1580 Complaint are the currently operative complaints in each respective action.

## DISCUSSION

### I. Standard for Determining the Motion

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes the truth of facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff. *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 154 (2d Cir. 2006). To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Unless a plaintiff's well-pleaded allegations have "nudged [its] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

In deciding a motion to dismiss, the Court may consider the full text of documents that are quoted in or attached to the Complaint, or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir.

5

2000) (citing *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991)); *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808 (2d Cir. 1996).

## II. The California Order Does Not Constitute Law of the Case.

As a preliminary matter, U.S. Bank argues that this Court is bound by the California Order, which, it claims, constitutes law of the case. The Court disagrees.

Under the law of the case doctrine, when a court "decides a rule of law, that decision should continue to govern in subsequent stages of the same case." *Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996). Application of the doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *DiLaura*, 982 F.2d at 76 (quoting *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

"Application of the law of the case doctrine varies depending upon the context. Although rulings of the district court are subject to revision by that court 'at any time before the entry of final judgment,' under law of the case a trial court cannot reconsider on remand an issue decided by an appellate court." *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148-49 (2d Cir. 1999) (quoting Fed. R. Civ. P. 54(b)). Here, because the California Order is not an appellate court ruling on remand, but a prior district court decision, the Court does not consider itself bound to follow it.

Additionally, the law of the case doctrine "only forecloses consideration of issues that have already been decided." *Steinfield v. Marks*, No. 96-cv-0552 (PKL), 1997 WL 563340, at *3 (S.D.N.Y. Sept. 8, 1997). Even if the California Order were binding on this Court, it would have little relevance here, where U.S. Bank has filed multiple amended complaints since the California Order was issued. "It is well established that an amended complaint ordinarily

6

supersedes the original and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation marks omitted).

And in any event, even if the California Order were a binding decision on the merits in the California Action, Judge Wright never had *any* occasion to decide the merits of PHL's motion to dismiss as applied to the New York Action, which (1) was filed after the California Order was issued and (2) is governed by New York, not California, law.

For these reasons, the law of the case doctrine has no bearing on the present motion.

### III. Plaintiff's Implied Covenant of Good Faith and Fair Dealing Claim (Count II) Is Dismissed in the New York Action.

The parties have argued, and the Court agrees, that New York substantive law applies to the claims in the New York Action and California substantive law applies to the claims in the California action. PHL argues that under either state's law, U.S. Bank's claim for breach of the implied covenant of good faith and fair dealing should be dismissed as duplicative of its express breach of contract claim. For the following reasons, U.S. Bank's implied covenant claim is dismissed in the New York Action, but not in the California Action.

#### A. Plaintiff's Implied Covenant of Good Faith and Fair Dealing Claim Does Not State a Claim Under New York Law.

Under New York law, there is a covenant of good faith and fair dealing implied in all contracts. *See 511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (N.Y. 2002); *Carvel Corp. v. Diversified Mgmt. Grp.*, 930 F.2d 228, 230 (2d Cir. 1991). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002). The implied covenant encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Manhattan Motorcars, Inc. v. Automobili*

7

*Lamborghini*, 244 F.R.D. 204 (S.D.N.Y. 2007) (internal quotation marks omitted). "The covenant cannot be used, however, to imply an obligation inconsistent with other terms of a contractual relationship." *Gaia House Mezz LLC v. State St. Bank & Trust Co.*, 720 F.3d 84, 93 (2d Cir. 2013) (citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995)).

To avoid redundancy, "Claims of breach of the implied covenant . . . must be premised on a different set of facts from those underlying a claim for breach of contract." *Deutsche Bank Sec. Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008). "A party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim." *Id.* Accordingly, "when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013).

Here, the majority of the allegations in U.S. Bank's claim for breach of the implied covenant of good faith and fair dealing in the Policies are duplicative of its breach of contract claim. "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris*, 310 F.3d at 81. U.S. Bank's claim here is precisely so based. Count II of the 13-1580 Complaint alleges as follows:

> 56. Defendant breached the implied covenant of good faith and fair dealing by undermining Plaintiff's right to pay premiums as needed to cover its monthly deductions, including the cost of insurance. By increasing the cost of insurance rates on policyholders who exercised their contractual right to pay only enough premiums to cover the policy's monthly charges (*including by basing the cost of insurance rates on a policy's accumulated value*), Defendant is, in effect, penalizing and deterring policyholders from exercising their contractual rights and is, thus, frustrating policyholders' right to one of the essential benefits of the policies.

8

57. Defendant also breached the implied covenant of good faith and fair dealing *by using the cost of insurance rates* to induce "shock lapses"—that is, making the Policies prohibitively expensive and trying to cause Plaintiff and other policyholders to lapse or surrender their policies so that Defendant can keep the premiums and never have to pay the death benefits.

. . .

60. Defendant also breached the implied covenant of good faith and fair dealing *by using the cost of insurance rates* as a device to manage its own profitability at the expense of its policyholders, including Plaintiff, and by imposing excessively high rate increases to accomplish that improper objective.

(13-1580 Compl. ¶¶ 56-57, 60 (emphases added)). The express breach of contract claim, meanwhile, states, in relevant part:

45. *Defendant breached the Policies by increasing the cost of insurance rates* based on a policy's accumulated value because accumulated value is not one of the permissible and enumerated bases for increasing the cost of insurance rates.

46. *Defendant also breached the Policies by increasing the cost of insurance rates* based on purported changes in expected funding levels because funding level is not one of the permissible and enumerated bases of increasing the cost of insurance rates.

47. *Defendant also breached the Policies by increasing the cost of insurance rates* only on certain policyholders and not others because such increases do not apply uniformly to a class of insureds and/or discriminate unfairly within a class of insureds.

(13-1580 Compl. ¶¶ 45-47 (emphases added)).

U.S. Bank nevertheless argues that its implied covenant claim is not duplicative of its express breach of contract claim under New York law because it also alleges that PHL "breached the implied covenant by providing inadequate notice of the COI rates increases—both in form and in substance." Pl. Opp. at 17. Indeed, paragraph 58 of the 13-1580 Complaint alleges:

58. Defendant also breached the implied covenant of good faith and fair dealing by failing to provide any meaningful disclosures about the cost of insurance rate increases, including Defendant's failure to identify the specific contractual provisions on which it was relying to increase the cost of insurance rates, failing to describe the alleged factual circumstances for raising the cost of insurance rates, and refusing to provide or make available the documents that Defendant

9

contended supports its alleged contractual and factual bases for raising the cost of
insurance rates.

(13-1580 Compl. ¶ 58).

The problem with this argument is that, as PHL points out, the Policies themselves address as a matter of contract what information must be provided in the event of a change in the COI rate. Part 5 of the Policies, which defines the term "Cost of Insurance Rates," provides: "At least 31 days before the start of the Policy Year, We will send You a notice of any change in [cost of insurance] rates." (13-1580 Compl. Ex. 2 at p. 10 of policy form). PHL argues that by alleging in its implied covenant claim that this notice was inadequate, U.S. Bank "seeks to use the implied covenant to add obligations to the contract." Reply Mem. at 7.

As noted above, under New York law, the implied covenant may not be used to "imply an obligation inconsistent with other terms of a contractual relationship." *Gaia House Mezz LLC*, 720 F.3d at 93. In *Gaia*, after the lender in a mezzanine loan agreement exercised a contract provision allowing it to revoke an accrued interest waiver, the borrower (which did not dispute that it was in default under the contract terms) brought an action for breach of the implied covenant, alleging that the lender had failed to "provide a credible and satisfactory explanation" for its decision to demand payment of the accrued interest. *Id.* After a bench trial, the district court entered judgment in favor of the borrower, but the Second Circuit reversed, holding that the borrower had not demonstrated that the lender had "violated an expected obligation." *Id.* The panel held that it could not "presume that the parties intended Gaia [the borrower] to obtain a waiver of the Accrued Interest upon an Event of Default or receive specific notice, because these obligations conflict with the express language of the Agreement," with which the lender had admittedly complied in full. *Id.*

10

Here, nowhere in the 13-1580 Complaint or in its motion papers does U.S. Bank allege that PHL failed to send *any* notice of its intention to raise cost of insurance rates. Instead, U.S. Bank admits that PHL complied with the Policies' notice requirement as written, but contends that the notice was nevertheless "inadequate." But as it did in *Gaia*, this argument fails because it conflicts with the express language of the Policies, which requires only that PHL send "a notice." To hold otherwise would be to imply into the Policies a contractual term that does not exist and to which the parties did not agree.

As for the remaining allegation in Count II, it is dismissed as well. In paragraph 59 of the 13-1580 Complaint, U.S. Bank alleges that PHL breached the implied covenant because it "intended to raise cost of insurance rates, but waited until after inducing people to purchase its policies before later raising the cost of insurance rates, as planned." (13-1580 Compl. ¶ 59). This allegation fails because a party "cannot breach a contract's implied promise of good faith and fair dealing before the contract is entered into." *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 300 (S.D.N.Y. 2012) (internal quotation marks omitted). PHL's preexisting intentions before the Policies were entered into cannot form the basis of an implied covenant claim.

For these reasons, Count II of the 13-1580 Complaint is dismissed.

### B. Plaintiff's Implied Covenant of Good Faith and Fair Dealing Claim Does State a Claim Under California Law.

Under California law, as in New York, where a plaintiff's allegations of breach of the covenant of good faith "do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Bionghi v. Metro. Water Dist. of S. Cal.*, 70 Cal. App. 4th 1358, 1370

11

(1999). Such a claim may survive in California, however, where a plaintiff is able to show that the defendant's conduct, "whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a *conscious and deliberate act*, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (Ct. App. 1990) (emphasis added).

California courts have found this necessary extra element of bad faith present where plaintiffs have alleged, for example, that an employment contractor intentionally provided inaccurate job descriptions so that it could avoid paying higher workers' compensation insurance rates, *see Sam Kohli Enterprises, Inc. v. BOC Grp., Inc.*, No. 11-cv-299 (DMS) (BLM), 2011 WL 3298902, at *5-6 (S.D. Cal. Aug. 1, 2011); that a record company knowingly misclassified digital music sales as record sales instead of licensed masters, and concealed this improper accounting, in order to pay lower royalties, *see Davis v. Capitol Records, LLC*, No.12-cv-1602 (YGR), 2013 WL 1701746, at *4-5 (N.D. Cal. Apr. 18, 2013); and that an employee refused to do her job unless she received extra payments from regional sales managers in addition to the compensation she was already being paid by her employer for the same services, *see Fields v. QSP, Inc.*, No. 10-cv-5772 (CAS) (SSX), 2011 WL 1375286, at *4-5 (C.D. Cal. Apr. 8, 2011).

Here, as Judge Wright held in the California Opinion, U.S. Bank has stated a non-duplicative claim under California law for breach of the implied covenant by alleging that PHL used costs of insurance rates "to make the Policies prohibitively expensive" and that it attempted to "cause [U.S. Bank] and other policyholders to lapse or surrender their policies so that [PHL]

can keep the premiums and never have to pay the death benefits." (12-6811 Compl. ¶ 47). This conduct may independently constitute bad-faith behavior, regardless of whether it breaches the express terms of the Policies.[2]

## IV. Plaintiff's Declaratory Judgment Claim (Count IV) Is Dismissed in Both Actions.

PHL argues that U.S. Bank's declaratory judgment claim should be dismissed because it is duplicative of the express breach of contract claim. The Court agrees.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a court "may declare the rights and other legal relations of any interested party seeking such a declaration" in "a case of actual controversy." An "actual controversy" exists if there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The parties' disagreement must "have taken on a fixed and final shape so that a court can see what legal issues it is deciding." *Jenkins v. United States*, 386 F.3d 415, 418 (2d Cir. 2004) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952)).

"Even where an actual controversy has been established, a court must still decide whether it will exercise its discretion to entertain a request for declaratory judgment." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010). The Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277

---

[2] Although the allegations in paragraphs 46, 47, and 49 of the 12-6811 Complaint survive as non-duplicative claims for breach of the implied covenant under California law, the allegation in paragraph 48—that PHL breached the implied covenant by "failing to provide any meaningful disclosures about the cost of insurance rate increases" (12-6811 Compl. ¶ 48)—fails for the same reason that the identical claim in paragraph 58 of the 13-1580 Complaint fails, as explained above. *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (Cal. 2000) (rejecting an argument that "the implied covenant can impose substantive terms and conditions beyond those to which the contract parties actually agreed").

13

(1995). In deciding whether to exercise its permissive jurisdiction, a district court may consider "equitable, prudential, and policy arguments," *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007), and should examine the situation in its entirety. *Great Am. Ins. Co. v. Houston General Ins. Co.*, 735 F. Supp. 581, 585 (S.D.N.Y. 1990).

More specifically, in deciding whether to entertain an action for declaratory judgment, a court is to consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Amusement Indus., Inc.*, 693 F. Supp. 2d at 311 (quoting *Duane Reade, Inc.*, 411 F.3d at 389). A court may also consider: "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." *Amusement Indus., Inc.*, 693 F. Supp. 2d at 311 (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003)).

Here, the Court declines to exercise its discretion to entertain U.S. Bank's claim for declaratory relief. Count IV of each complaint states, in relevant part:

> Accordingly, Plaintiff seeks a declaration (a) that Defendant cannot base cost of insurance rates, or any changes to cost of insurance rates, on a policy's accumulated value, the ratio of the accumulated value to its face amount, or on policy funding levels or funding patterns; (b) that Defendant's purported "class" of policies defined by issue age and face amount and/or accumulated value are improper classes; and (c) setting forth the specific guidelines that govern the factual circumstances under which Defendant can increase the cost of insurance rates.

(12-6811 Compl. ¶ 65; 13-1580 Compl. ¶ 76). PHL does not dispute that an actual controversy exists between the parties, but argues instead that U.S. Bank's claim is duplicative of its breach of contract claim. In response, U.S. Bank notes, correctly, that "declaratory relief is intended to

14

operate prospectively," and argues that its declaratory judgment claim "only seeks prospective relief." Pl. Opp. at 19 (quoting *John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-cv-5453 (CM), 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011)).

That the declaratory relief sought by U.S. Bank addresses future circumstances does not automatically render adjudication of the claim appropriate; rather, it is but one factor informing the analysis under the criteria listed above. Here, the declarations that U.S. Bank seeks involve conduct so similar to that covered by its express breach of contract claim that entertaining the declaratory judgment claim would not satisfy such criteria, regardless of the inclusion of future conduct.

"The fact that a lawsuit has been filed that will necessarily settle the issues for which declaratory judgment is sought suggests that the declaratory judgment will serve 'no useful purpose.'" *Amusement Indus., Inc.*, 693 F. Supp. 2d at 311. The declaratory judgment that U.S. Bank seeks would serve no "useful purpose" in the overall context of this litigation. Count I, which alleges breach of express provisions of the Policies, fundamentally turns on the permissibility of the COI Increases. Indeed, it would be impossible for the Court to find in U.S. Bank's favor on that claim without making a determination as to the COI Increases. Each declaration that U.S. Bank seeks under Count IV is premised on the same COI Increases. U.S. Bank's declaratory judgment claim thus "seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249-50 (S.D.N.Y. 2006).

Nor would the declaratory relief U.S. Bank seeks offer any additional "relief from uncertainty." As discussed in connection with the "useful purpose" analysis above, adjudication

15

of U.S. Bank's breach of contract claim will address the issues of the validity of the COI Increases on which the claim for declaratory relief rests. Thus, any uncertainty regarding the legality of such actions will of necessity be relieved without the need for a declaratory judgment. *See Amusement Indus., Inc.*, 693 F. Supp. 2d at 312; *Intellectual Capital Partner*, 2009 WL 1974392, at *6.

U.S. Bank contests this point, arguing that a decision on its express breach of contract claim "will not set guidelines for the factual circumstances under which PHL can raise the cost of insurance rates." Pl. Opp. at 20. "A determination that accumulated policy value is not a permissible basis for a rate increase," it writes, "will not provide guidance if PHL raises rates based on a different (impermissible) factor in the future." *Id.* What such a different, impermissible factor may be, or whether PHL has ever threatened or shown itself likely to employ such a factor, U.S. Bank does not say. Its argument appears to be a purely hypothetical one, and under the Declaratory Judgment Act, a court may not adjudicate "a difference or dispute of a hypothetical or abstract character" or "one that is academic or moot." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937).

U.S. Bank also argues that parts (a) and (b) of its declaratory judgment request will not necessarily be resolved by a decision in its favor on its express breach of contract claim. U.S. Bank points out, for example, that a finding that PHL's COI rate increases breached the express terms of the Policies because they were inappropriately based on accumulated value would be sufficient for a judgment in U.S. Bank's favor on its express breach of contract claim, but would not necessarily establish that it would breach the Policies for PHL to do other things, such as to "define a class based on issue age and face amount or accumulated value" or to "raise COI rates based on factors not enumerated in the Policies." Pl. Opp. at 20-21.

16

This is true, but irrelevant. "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated [their] lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). A finding that PHL's COI rate increases breached the express terms of the policies would resolve the legal dispute between the parties about whether the particular actions taken by PHL breached the Policies. *See Fleisher*, 858 F. Supp. 2d at 300-304 (dismissing substantially similar declaratory judgment claim).

"When [a] traditional remedy provides the parties with the procedural safeguards required by the law to insure the availability of a proper remedy, the courts, in exercising their discretion, may properly dismiss the declaratory judgment action.") *John Wiley & Sons, Inc.*, 2011 WL 5245192, at *4 (quoting *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1169 (7th Cir. 1969)). Although U.S. Bank's declaratory judgment claim does not engender worries about "procedural fencing" or "friction between sovereign legal systems, there nevertheless exists a "better or more effective remedy": resolution of the basic breach of contract claim. As discussed above, resolution of that claim will answer the questions U.S. Bank raises in this one, rendering Count IV subject to dismissal. *See Amusement Indus., Inc.*, 693 F. Supp. 2d at 312.

## CONCLUSION

For the foregoing reasons, PHL's motion to dismiss is granted in part and denied in part. Count II of the Second Amended Complaint in the action at Case No. 13-cv-1580 is dismissed, and Count IV of the Second Amended Complaint is dismissed in both actions. The Clerk of the Court is directed to remove Docket No. 212 in Case No. 12-cv-6811 and Docket No. 27 in Case No. 13-cv-1580 from the Court's list of pending motions.

Dated: March 14, 2014

_____
U.S.D.J.

BY ECF TO ALL COUNSEL